Lexus on call is 517-534-2300 for a Rider. May it please the court, good morning, my name is Andrew Flynn, I represent the defendant appellate Damian Rider, the administrator of the Estate of Roseanne Rider in this matter. This morning, I know there's a few items referenced throughout our briefs, but I plan on focusing on what I believe is the main issue, which is whether the circuit court erred in finding that the decedent and the plaintiff in this case entered into an implied oral contract to make a will. It's our position that the court did err in that decision, and that decision is against the manifest way of the evidence. Now briefly, Roseanne Rider passed on May 17, 2012. Within the plaintiff's complaint, she alleges that there was an implied oral contract entered between the parties sometime in March of 2011. Damian Rider is the grandson of the decedent, and the plaintiff, Stephanie Rider, is the daughter-in-law of the decedent. There is no will, and Roseanne Rider died at test date. Now the law element is pretty clear on how we're supposed to handle these types of cases. The burden is on the plaintiff to prove, by clear and convincing evidence, that there is clear, explicit, convincing, certain, and definite terms as to any implied oral contract. The terms must be so clear and unambiguous that it can leave no doubt as to its terms, and mere statements of intentions and things of that nature are not sufficient. And the plaintiff must prove, by clear and convincing evidence, that the plaintiff changed her position and reliance upon these terms. And the plaintiff must prove, by clear and convincing evidence, that she relied to her detriment on these terms. And the plaintiff has to prove, by clear and convincing evidence, that her providing these services in the incident case cannot be reasonably harmonized with any other theory. Now in this case, the evidence is clear that the plaintiff did not meet her burden. First, all of the evidence and witnesses that were submitted by the plaintiff contradict one another. While some of them do say similar things, none of them say the exact same thing. There's no evidence as to when this alleged implied oral contract was offered. There's no evidence as to when this implied oral contract was accepted. There's no evidence as to what the exact terms of this implied oral contract were. Some of the plaintiffs testified that the decedent had stated that the plaintiff was going to get, quote, everything. Some of the witnesses testified that the plaintiff was going to get her vehicle. Some of the witnesses testified that she was going to get some of her assets, whether it was her house or her contents. But none of the witnesses say the same thing. Again, these are all the witnesses that I'm talking about right now are the plaintiff's witnesses. Further, there's no evidence that the plaintiff changed her position in reliance upon this alleged implied oral contract. The evidence from the plaintiff's witnesses go back to some of the witnesses say she began providing these services in 2006, which would have been at least five years before this alleged implied oral contract was entered. Some of them say six to seven years prior to the decedent passing. Some of the evidence presented state various items where the plaintiff provided the same level of services throughout this whole entire time period. So there's no evidence that suggests at all that the plaintiff changed her position or what she was doing in reliance on this implied oral contract. The circuit court found that for this element, that because the decedent naturally got older, naturally had additional health problems, that the plaintiff's services would have increased. But there's nothing in the record that says that. There's no evidence that suggests that the plaintiff increased the services she was providing to this decedent because she was getting older or because she was aging or because she was needed additional medical help. Now, there's no dispute that the plaintiff did provide services for the decedent. We're not saying that. But the elements that are required by the plaintiff to prove by clear and convincing evidence simply weren't there. How long were these services provided? The evidence suggests anywhere from back to 2006, probably around that range. The evidence suggests any time from six to seven years before the decedent passed, which would have been around 2006, 2007 time period.  The daughter-in-law. Her husband is the son of the decedent. Now, another element that the plaintiff was required to prove by clear and convincing evidence was that she relied on this implied contract to her detriment. Again, similar things that I've just been talking about. There's no evidence that she detrimentally relied on this promise. She had been providing these services for the past six or seven years. Additionally, the evidence that was submitted to the court was that she was also receiving benefits. The decedent paid for some of her bills, took her on trips, took her children on trips, took them out to eat, and things of that nature. So she was receiving some compensation, which kind of leads into the next element that the plaintiff was required to prove by clear and convincing evidence, that this situation cannot be reasonably harmonized with any other theory. And I think it's very simple to reasonably harmonize this with any other theory with two. One, she was receiving some compensation, as we discussed. And second, she was a daughter-in-law. She had been providing these services. Certainly daughters-in-law aren't required to provide these services, but it's not unusual for family members to help out the elders in their family. And that's what had been happening for six or seven years prior to this alleged implied oral contract. Was she living in the same household then at the time? No. Or just at the end? I believe towards the end. And how long was that? I'll have to double-check the record, but I believe perhaps the last year or so. I don't know. It was for Watson. Maybe we'll speak better to that. Did she live in that local community, in that same community? Yes. Yes. Now, some additional consideration that the court's supposed to consider in these situations is the fact that the plaintiff, the decedent cared for the plaintiff isn't sufficient. And the fact that the decedent made general statements of maybe wanting to give the plaintiff things isn't enough. Again, we have to look back at those clear, explicit, convincing, certain, and definite terms. Now, the court is also supposed to consider other items that the decedent may have done, obviously her statements, but other attempted wills. In this case, Exhibit A was entered into evidence, which was a writing from the decedent. They kind of listed out where her assets were going to go. Within Exhibit A, it stated that the plaintiff was to get her car, but it listed her home to go to other people, the contents of her home to go to other people. So while we're not saying that's a will, that is something that was presented to the court and, again, contradicts the plaintiff's evidence. It was undated. I believe the court ultimately found that that would have been prior to these alleged statements, but there's no definite statement. Is it five years, two years, one year? There was no date. I think the court just concluded that it must have been before these alleged statements from the witnesses. But, again, that again goes to uncertainty, unclear, ambiguous terms. And here, as the Illinois Supreme Court has said in Harper, I think one of the most important things to look at is where the promise is uncertain, and the instrument is ambiguous. No agreement can be enforced. In this case, the promise is completely uncertain. There's no definitive testimony or evidence whatsoever, and there is no instrument other than Exhibit A, which we're not saying is a will, but it kind of expressed the deceit's wishes. So here, the alleged promise is most definitely uncertain. There's no instrument other than Exhibit A, so this alleged agreement cannot be enforced. And so, as such, we're respectfully asking that this matter be reversed and remanded with directions to distribute this estate via the intestacy statute. And, again, we're not asking to not include the plaintiff. Her husband is an heir of this estate. So that's what we're requesting. Do you have any other questions for me this morning? No further questions. Thank you. Thank you. Just to be clear, did you state your name for the record? I did. Thanks, Sheriff. Thank you. Good morning. May it please the Court and the Counsel. My name, official name, I guess, for the record is Carlin Martel Watson, Jr., for 40 years, known by the name C. Martin Watson. Anyway, I'm with the law firm of the Law Offices of Watson and Murphy, and we represent the plaintiff appellee in this matter, Mrs. Ryder, Stephanie Ryder. Our main contention, plaintiff's main contention, is that the trial court's finding that the plaintiff was approved by clear, explicit, convincing evidence that an implied contract maker will existed between the plaintiff and the decedent was not against the manifest weight of the evidence, which we believe to be the standard of review in this type of cases. We rely primarily on the case, In Re, the State of Neos, which is cited throughout our brief along with numerous other cases on various points. But the Neos case is very similar to the case before us today. From a factual standpoint, in many respects, the plaintiff in Neos was a niece of the decedent's wife, who had taken care of him for some time. He promised to leave her everything if she continued to take care of him. She did not testify. The plaintiff in Neos did not testify because of the Dead Man's Act, same situation in this case. There were no other witnesses to the alleged agreement, same as in this case. The decedent had told other acquaintances and friends of her intentions, and, in fact, told another person that the niece had, in fact, promised to stay with him for the rest of his life. Same situation in this case. I believe the defendant's primary argument is that there is no direct evidence of a contract. Counsel, it seems like the opposing counsel also argued that there were witnesses who testified, but they were inconsistent. And so the court could not have reached the fact that there was an explicit agreement proven because of inconsistencies in the testimony. What's your response to that? Okay, I believe the plaintiff called, I think, six witnesses, also offered into the evidence deposition of another witness, and there was some what I would call minor inconsistencies. You know, again, one said she mentioned that Stephanie was to get her car because she always drove her everywhere in that car. You know, I don't know that that's inconsistent in the fact that that just stuck in her mind, that she was supposed to get the car, and maybe the conversation didn't call for her to mention other things. But, yeah, there was testimony that one said the house and didn't mention, you know, the car. But to me, the two main witnesses that we called were consistent, and I believe are the ones that have established the fact that there was a contract. Again, Illinois law is you don't have to establish it by direct evidence. You can establish it by circumstantial evidence, by declarations made to others, outside the presence of the other party to the contract, and that's what the Niehaus case supports and stands for as well. But one witness, let me look here, by the name of Bernice Militello, who testified in the way of evidence deposition because of her health, had known the defendant since the first, or excuse me, the decedent since the first grade, talked to her often and whatnot. But part of her testimony was that Ann, the decedent, had told her that she had told Stephanie that if Stephanie stayed with her until she died, she would give everything to Stephanie. I think basically that the house, the car, and the contents were basically everything she had. But the other witness, I think really her testimony establishes the elements of the contract. Testified, quote, during the visit of 2012, Ann and I had several discussions regarding how our assets would be distributed on her death. She told me several times that her children would receive $5 each, and she had agreed with Stephanie to leave Stephanie her house, its contents, and her car in return for Stephanie agreeing to take care of her for the rest of her life, and that Stephanie had agreed to do so. So here's a declaration by the decedent to an innocent party that establishes that she had made an offer to Stephanie, that Stephanie had accepted it, and that there was consideration, which are the basic elements of a binding contract, consideration being the mutual promises. You take care of me the rest of my life, and I'll make a will leaving my house, contents, and car to you. So I think the other testimony from the other witnesses all agree, and their testimony was that the decedent had intended to compensate Stephanie for the services that she had rendered and was going to render. Now, as far as the issue of whether or not her position was changed, I would argue, first of all, that the trial court found that her position had changed. The trial court also decided that it distinguished the cases relied on by the defendant, whereby there was an issue of compensation in the case, I believe the Cain case, relied on by the defendant. The plaintiff there had been paid $15 a day for taking care of a regular, consistent payment. The plaintiff here, the testimony was every once in a while, the decedent would pay for her haircut, her kid's haircut, would give her a gift, maybe sometimes pay her a nominal sum, but there was no regular compensation paid. So the trial court really distinguished it and said that it wasn't necessary to show that there had been a change in circumstances. But, you know, I would argue that there was a definite change in her circumstances and that prior she had been doing this basically on a volunteer basis, you know, without any obligation to continue doing it as to the extent. But after she accepted the decedent's offer to leave her and everything, and she continued taking care of her and she accepted that, agreed to it, she was legally bound to do that. Her position had changed. She really couldn't just morally or legally turn around and say, I changed my mind, I quit. So I think that was a change in circumstances. Again, we argued and the trial court found that she had relied to her detriment on the contract. I think there was testimony from even the administrator and the daughter that their grandmother and mother had, as she was declining, required more mental care and whatnot, even to think possibly that she might have been in the nursing home and had not been for the plaintiff. So her position changed to her detriment from that standpoint and rendering more care. And, again, I think there's some testimony that she couldn't do things that she used to do from other witnesses. I mean, she always took the kids to school until she started this. Her husband started to take her. Her husband went to the ball games with the kids rather than the plaintiff and that type of thing. So I think those are basically side issues, but there was a change in her position to her detriment. Again, the trial court found that services performed by the plaintiff were above and beyond the normal reasonable daughter-in-law, reasonable normal daughter-in-law would have been provided. And that came from testimony of our six witnesses as well as the administrator and the daughter as to things that she did do. But the trial court also found, based on the testimony of plaintiff's witnesses, and, excuse me, that there was no other way to reasonably harmonize that with any other theory but that she was doing it for compensation. Exhibit A that was introduced by the defendant was a written document. And, again, it was not dated. There was no idea as to when it was written, although the trial court did point out that the daughter's testimony, the decedent's daughter's testimony, was that the decedent had given her a necklace sometime, she thought, in 2011. The written document referred to as Exhibit A made mention of that necklace that the daughter was to give. So, obviously, whenever this written document was written, it was prior to her giving the actual necklace to the daughter, rather than waiting for the daughter to get it at death. So that's the only thing we know that it had to be some time before that. And, again, it was not a legal will. We don't know. There was some testimony about family differences and that sort of thing along the way with the grandsons. So, anyway, in the defendant's brief, they argue about the statute of frauds, Section 1 and Section 2, providing that an agreement has to be performed in one year, an oral agreement, or that it has to be real estate, it has to be in writing. I think those are obviously not good arguments in that the law is very clear in Illinois that complete performance of a contract, an oral contract, will take it outside of the statute of limitations, both as to personal property and real property. As to the one year, if the cases say that if the contract is contingent upon a happening, that it has to be in writing, that it could happen within one year, including death, then that takes it outside of that provision of the statute of limitations. Obviously, the agreement was to take care of the decedent until her death, which could have occurred within the period of one year. So that falls within the cases saying that takes it outside of the statute of limitations, or excuse me, the statute of frauds. Again, there's raised in the defendant's brief the issue of quantum variable. That was a count that we had, an alternative count. The trial court in its decision stated that it was not addressing that because it was really an only contract, and we would argue that that issue is not properly before this court. It was not raised in the notice of appeal. Again, there was no decision on that. Again, that's pretty well our argument. We feel that the trial judge in this case, he heard the evidence, observed the witnesses, judged their credibility, wrote what I thought was a detailed and well-reasoned opinion with factual findings, and he did find that the necessary elements were proven by clear and convincing evidence, and that decision should not be overturned as it was not against the manifest weight of the evidence. Thank you, counsel. Just all of the witnesses that we've discussed throughout here so far have been the plaintiff's witnesses. All the inconsistencies we've heard are just the plaintiff's witnesses. Ms. Julie Shaw, who was the decedent's hairdresser since 1991 and saw her two to three times a week, only mentioned the car. She didn't mention the house or the belongings or anything like that. Counsel, is that an inconsistency, though? You have to testify to the full agreement. She's just testifying to one item, but anyway, that's my question. I think it is. What did the decedent tell you the plaintiff was going to get, her car? Not the house, not everything she owned. Another witness, Ms. Karen Black, said the same thing. So these inconsistencies are clear, and the reason why it's important is because the burden is on the plaintiff, and the law is very clear. Clear, explicit, certain, definite, consistent, unambiguous, and unequivocal terms. These terms, the evidence presented by the plaintiff, were none of those things. Again, and that does, what I was bringing up, these are just the plaintiff's witnesses. That doesn't even include all the discrepancies and inconsistencies by the defendant's witnesses, which said different things. Again, no one disputed the services that the plaintiff provided, but there was additional testimony from the defendant's witnesses that their mother, or the decedent, often changed her mind about who was getting what, and she would get mad at certain people and change her mind, or be a good term to certain people and change her mind. So the evidence presented to the court as a whole, including Exhibit A, which is undisputed that the decedent's writing, all contradict one another. And that's why the court is to accept the evidence with caution and use the most strict scrutiny. And the reason, if you think about it, why we have such strict scrutiny is because we have these rules. When you're creating a will, there are certain rules about it being in writing to uninterested witnesses and things of that nature. That's why, when we have these rules and we're not using them, we have to apply the most strict scrutiny. And in this case, the burden being on the plaintiff, the burden was not met by proving all of these requirements by clear and convincing evidence. Was there any testimony about any other services that were provided by any of the other of the decedent's children? I think other than menial tasks, I think there's no dispute that the plaintiff provided the vast majority of services for the decedent. But again, going on that, one of the elements that we discussed previously is the change in circumstances. And while there's no dispute the plaintiff provided these services, there's also no contradictory evidence that there was no change in the services the plaintiff provided going back six to seven years. Within their complaint, they allege this happened in March of 2011, a little over a year prior to the decedent's passing. So the same services being provided for the last six or seven years would show that there's no change in circumstances. All of the plaintiff's witnesses testified that, yes, she provided the services, but could not testify to any distinct differences in the services she provided throughout that entire time period. Thank you. We'll take a short recess before calling it a day.